# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SC2006, LLC, <br><br> Plaintiff <br><br> v. <br><br> Arbor Agency Lending, LLC, et al., <br><br> Defendants | Case No.: 2:18-cv-02003-JAD-BNW <br><br> **Order Supplementing Findings of Fact and Conclusions of Law, Denying Damages Award, and Granting Motion for Leave to File Surreply** <br><br> [ECF No. 55] |

Apartment-complex owner SC2006, LLC sues lender Arbor Agency Lending, LLC (and its alter-ego companies, Arbor Commercial Funding I, LLC and Arbor Realty Trust) because it failed to provide SC2006 with a mortgage loan in time to pay off its debts.[1] Asserting that the parties had a contract and that Arbor had bound itself to issue the loan, SC2006 sought damages for Arbor's breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, bad-faith lending practices, and negligent misrepresentation. On April 7, 2021, I entered judgment in favor of SC2006 on one of its breach-of-contract theories as to liability only and Arbor's attorneys' fees counterclaim, and I entered judgment in favor of Arbor on the remaining claims.[2] I also directed the parties to brief the issue of damages because SC2006 had failed to explain what damages, if any, it incurred from Arbor's failure to finish processing the loan application.

---

[1] ECF No. 14.

[2] ECF No. 49 (findings of fact and conclusions of law).

SC2006 largely ignored that request and, instead, submitted the damages model it previously provided for the bench trial.³ But as I explained in my April 7th order, that model failed to disaggregate the damages caused by Arbor's unlawful failure to *process* the loan application from those damages caused by Arbor's anticipated decision not to *issue* SC2006 a loan. Recognizing this oversight, SC2006's overlong reply brief impliedly asks me to reconsider my findings of fact and conclusions of law; find that Arbor was contractually obligated to issue it a loan or, in the alternative, that Arbor breached the implied covenant of good faith and fair dealing; and award it $1,077,806 in damages.⁴ Arbor moves to file a surreply responding to these new arguments,⁵ to which SC2006 responds with more merits-based arguments.⁶ Seeing that good cause exists,⁷ I grant Arbor's motion and, after considering the parties' arguments, find that SC2006 has failed to prove its damages.

## Discussion⁸

In my April 7, 2021, findings of fact and conclusions of law, I entered judgment in favor of SC2006 on its breach-of-contract claim and requested that the parties brief a narrow issue: what damages, if any, "spring[] from the breach of the promise to process the application, rather

---

³ ECF No. 50 (SC2006's opening brief).
⁴ ECF No. 54.
⁵ ECF No. 55.
⁶ ECF No. 56.
⁷ L.R. 7-2(g). Courts in this district routinely interpret Local Rule 7-2 to allow the filing of surreplies by leave of court to "address new matters raised in a reply to which a party would otherwise be unable to respond." *Kavnick v. City of Reno*, No. 3:06-CV-00058, 2008 WL 873085, at *1 n.1 (D. Nev. Mar. 27, 2008) (emphasis omitted); *see also FNBN-RESCON I LLC v. Ritter*, No. 2:11-cv-1867, 2014 WL 979930, at *6 (D. Nev. Mar. 12, 2014).
⁸ The parties are familiar with the facts of this case, so I do not repeat them here. *See* ECF No. 49 at 2–6.

2

than from denial of the funding."[9] Under New York law, which applies here, "[c]ausation is an essential element of damages in a breach of contract action; and, as in tort, a plaintiff must prove that a defendant's breach directly and proximately caused [its] damages."[10] "Whe[n] a party has failed to come forward with evidence sufficient to demonstrate damages flowing from the breach alleged and relies, instead, on wholly speculative theories of damages, dismissal of the breach of contract claim is in order."[11] Damages "attributable [] to intervening causes" not substantially incurred by[,] or a foreseeable consequence of[,] the defendant's breach cannot be recovered.[12]

The parties agree that SC2006 seeks expectation damages—which are "the amount necessary to put [plaintiff] in as good a position as [it] would have been if the defendant had abided by the contract."[13] But SC2006 fails to provide evidence of the damages it incurred from Arbor's failure to process its loan application.[14] It argues instead that it is entitled to receive four categories of damages: (1) $22,370 in reimbursement costs, which it incurred by applying for the loan from Arbor; (2) $793,131 to "cover" two old loans that "could have been paid off [] had Arbor issued the loan";[15] (3) $50,075 to "cover" a third old loan, which it would similarly not have been forced to pay "if Arbor had funded the loan as it should have";[16] and (4) $224,100 in interest for a "hard money loan" to repay default charges on the loans described in category

---

[9] *Id.* at 12.

[10] *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004).

[11] *Lexington 360 Assocs. v. First Union Nat'l Bank of N.C.*, 234 A.D.2d 187, 190 (N.Y. 1st Dep't 1996) (citation omitted) (granting summary judgment because the plaintiff failed to advance any theory of damages supported by the record showing that damages were attributable to a breach).

[12] *Wilder v. World of Boxing LLC*, 310 F. Supp. 3d 426, 448 (S.D.N.Y. 2018).

[13] *Trans World Metals, Inc. v. Southwire Co.*, 769 F.2d 902, 908 (2d Cir. 1985).

[14] *Compare* ECF No. 50 *with* ECF No. 46.

[15] ECF No. 50 at 3.

[16] *Id.*

3

two.[17]  But as Arbor argues, and SC2006 explicitly concedes,[18] those latter three categories of damages are exclusively tethered to Arbor's failure to issue the loan.  They are not proximately or directly caused by the failure to process, and potentially deny, the loan application.  So I cannot award the $793,131, $50,075, or $224,100 damages requests.

The only category of damages ostensibly related to the breach that I found in this case is the $22,370 in reimbursement costs, which Arbor argues it was not contractually obligated to pay.[19]  SC2006 declines to address this argument.  "The best evidence of what parties to a written agreement intend is what they say in their writing."[20]  Under longstanding rules of contract interpretation, "[w]here the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole."[21]  The loan-application agreement unambiguously states that SC2006 would pay a $20,500 application fee, against which Arbor would levy certain enumerated expenses.[22]  It also provides that any additional "expenses incurred by Arbor" to process the loan, regardless of "whether or not the [l]oan closes," must be "remitted" to Arbor if they "exceed" the deposit amount.[23]  And it implies that

---

[17] *Id.* at 4.

[18] ECF No. 54 at 7 ("[I[f Arbor had completed the loan processing . . . it would have issued the loan."); 8 ("Therefore, if the loan had been funded, Plaintiff would not have suffered the damages set forth in it's [sic] two opening brief's [sic] and it's [sic] supplemental brief that the court ordered.").

[19] ECF No. 53 at 5.

[20] *Slamow v. Del Col*, 79 N.Y.2d 1016, 1018 (Ct. App. 1992).

[21] *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 244 (Ct. App. 2014) (citing *Greenfield v. Philles Recs.*, 98 N.Y.2d 562, 569 (Ct. App. 2002)).

[22] ECF No. 45-2 at 3 ("The Application Fee will be used by Arbor to . . . .").

[23] *Id.* at 4.

4

any unused funds would be reimbursed to SC2006.[24] The parties agree that Arbor spent $22,370 in processing costs, far exceeding the deposit amount.[25] Because Arbor was not obligated to return the processing costs deducted from the deposit, regardless of whether or not the loan was approved, I find that SC2006 is not entitled to these damages either.

SC2006's new reply-brief arguments—each of which essentially demands damages because Arbor "would have issued the loan" if it "had completed the loan processing"—do not persuade me otherwise. While not styled as a motion for reconsideration, SC2006's overlong reply brief seems to seek just that: it asks me to apply breach-of-contract, equitable-estoppel, waiver, bad-faith, and implied-breach theories to find that "Arbor had an implied obligation to fund the loan."[26] Under Federal Rule of Civil Procedure 60, a court may "relieve a party or its legal representative from a final judgment, order, or proceeding."[27] Reconsideration motions are generally appropriate when the district court is presented with newly discovered evidence or has committed clear error, or there is an intervening change in controlling law.[28] But "a motion for reconsideration is not an avenue to re-litigate the same issues and arguments;"[29] a party seeking reconsideration must present "facts or law of a strongly convincing nature" that provide a "valid reason" why reconsideration is appropriate.[30] I already considered and rejected every single one

---

[24] *Id.*
[25] ECF Nos. 50 at 11; 45-3 at 102.
[26] ECF No. 54 at 7, 9, 14.
[27] Fed. R. Civ. P. 60(b).
[28] *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).
[29] *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005).
[30] *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003).

of SC2006's trial arguments,[31] and the property company fails to submit new evidence, identify a clear error of law in my decision, or submit intervening precedent that might warrant reconsideration.

Even were I to address these arguments on their merits, however, I find that SC2006 has failed to justify reconsideration of my April 7th order. In both its reply brief and its response to Arbor's motion for leave to file a surreply (in which the property company responds substantively to Arbor's surreply briefing),[32] SC2006 repeatedly asserts that the contract requires Arbor to issue it a loan once the lender finished processing the company's application. But SC2006 fails entirely to point to a contractual provision requiring that outcome. The opposite, in fact, appears to be true. The loan-application letter was not a promise to provide the loan, and it noted that approval of the application would "be subject to a complete underwriting review, site visit[,] and the [l]ender's loan committee approval."[33] SC2006 presents no evidence that the application was reviewed by the loan committee, much less that it would have received

---

[31] ECF No. 49. Though not disregarded on this basis, SC2006's 21-page reply brief also violates this court's local rules, which limit reply briefs to 12 pages, and improperly introduces new arguments. L.R. 7-3(b). "Local Rules are promulgated by [d]istrict [c]ourts primarily to promote the efficiency of the Court, and [] the [c]ourt has a large measure of discretion in interpreting and applying them." *Lance, Inc. v. Dewco Servs., Inc.*, 422 F.2d 778, 784 (9th Cir. 1970). Courts nationwide have long declined to consider arguments raised under such circumstances. *FT Travel—New York, LLC v. Your Travel Ctr., Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) ("Courts decline to consider arguments that are raised for the first time in reply."); *Ellison Framing, Inc. v. Zurich Am. Ins. Co.*, 805 F. Supp. 2d 1006, 1011 n.1 (E.D. Cal. 2011) ("[T]he court typically cannot consider arguments first raised in reply."); *Dietrich v. Trek Bicycle Corp.*, 297 F. Supp. 2d 1122, 1128 (W.D. Wis. 2003) ("Defendants raised this argument for the first time in its reply brief. Because this argument should have been raised earlier or not at all, I will not consider it."); *Pub. Citizen Health Res. Grp. v. Nat'l Inst. of Health*, 209 F. Supp. 2d 37, 44 (D.D.C. 2002) ("The Court highly disfavors parties creating new arguments at the reply stage that were not fully briefed during the litigation.").

[32] ECF No. 56.

[33] ECF No. 46-1 at 2; *see also* ECF No. 49 at 2.

committee approval.[34] Again, the uncontroverted evidence shows otherwise: the lender's chief underwriter decided to stop processing the application because of his concerns over the property company's trustworthiness.[35] It hardly follows that, but for the decision to halt processing the loan, approval of the loan was assured. And because damages must be "directly traceable to the breach, not remote or the result of other intervening causes,"[36] I decline to disturb my judgment order, and I find that SC2006 has failed to prove its damages.

## Conclusion

IT IS THEREFORE ORDERED that defendant Arbor's motion for leave to file a surreply **[ECF No. 55] is GRANTED.**

Based on these and my prior findings of fact and conclusions of law, and with good cause appearing and no reason for delay, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

- **Final judgment is entered in favor of plaintiff SC2006 against defendant Arbor on plaintiff's breach-of-contract claim and defendant's "attorneys' fees" counterclaim, for $0.00**.

- **Final judgment is entered in favor of the defendant and against plaintiff SC2006 on plaintiff's claims for breach of the implied covenant, promissory estoppel, negligent misrepresentation, bad-faith lending practices, and "alter ego."**

---

[34] ECF No. 45-4 at 15 ("And the underwriter would compile all of that analysis into a loan committee package that would be reviewed by the loan committee. And if approved, then it would move forward to issuance of a commitment and then rate locking of the loan and then closing of the loan."); 24 (Question: "So on the 5th, the loan committee did not take it under advisement at that time and made no decision. They postponed it." Answer: "It appears that way.").

[35] ECF Nos. 45-3 at 113; 45-4 at 4, 15.

[36] *Wenger v. Alidad*, 256 A.D.2d 322, 323 (N.Y. 2d Dep't 1999).

7

**The Clerk of Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
July 1, 2021